UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

AMERICAN ANGLIAN ENVIRONMENTAL TECHNOLOGIES, L.P.,

Plaintiff,

v.

ENVIRONMENTAL MANAGEMENT CORPORATION,

Defendant.

No. 4:01CV1951 FRB

**MEMORANDUM AND ORDER**

Presently pending before the Court is Plaintiff's Motion to Enforce Settlement Agreement (filed April 4, 2006/Docket No. 38), Defendant's response and Plaintiff's reply thereto. All matters are pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c). A hearing on the motion was held before the undersigned on May 1, 2006.

A party seeking specific performance of a settlement agreement bears the burden of demonstrating the existence of the agreement by clear, convincing and satisfactory evidence. Vulgamott v. Perry, 154 S.W.3d 382, 388 (Mo. Ct. App. 2004); B-Mall Co. v. Williamson, 977 S.W.2d 74, 77 (Mo. Ct. App. 1998). Negotiations or preliminary steps toward a settlement do not themselves constitute a settlement contract. L.B. v. State Comm. of Psychologists, 912 S.W.2d 611, 617 (Mo. Ct. App. 1995). "If the

parties reserve any of the essential terms of the purported contract for future determination, there is no valid binding agreement." Id.

For a compromise settlement to be legally valid, it must possess the essential elements of an enforceable contract. L.B., 912 S.W.2d at 616. Such essential elements include "mutuality of agreement," that is, "a mutuality of assent by the parties to the terms of the contract." Id. at 617. "The nature and extent of a contract's essential terms which form the basis of the parties' mutual assent must be certain or capable of being certain," id., and sufficiently definite to enable the court to give them exact meaning. Vulgamott, 154 S.W.3d at 391-92. There must be a meeting of the minds between the parties which the court can determine by looking to the intentions of the parties as expressed or manifested in their actual words or acts and not upon the understanding or supposition of one of the parties. L.B., 912 S.W.2d at 917.

> [A] contract is not complete until the proposition of one is presented to the other and accepted *as presented.* The acceptance of a proposition presented by one party must be accepted by the other in the form tendered; *if the acceptance purports to add or alter the proposition made, then neither party is bound.*

Id. (citation omitted) (emphasis added).

When a party adds or alters terms of an original settlement offer, that party makes a counteroffer, thereby rejecting the original

offer.  Id. at 618.  Mere inquiries, however, as to whether the offeror will alter or modify its terms do not amount to a rejection of the original offer.  Beck v. Shrum, 18 S.W.3d 8, 10 (Mo. Ct. App. 2000).  "Consequently, if the offer has not been withdrawn, it may be accepted within a reasonable time to create a binding contract."  Id. at 11.

"When an offer is made and no time limit is specified as to the time to accept the offer and the duration of the power of acceptance is not stated, then it is deemed that the offer is open for a reasonable period of time."  Woods ex rel. Woods v. Cory, ___ S.W.3d ___, 2006 WL 572320, at *6 (Mo. Ct. App. Mar. 10, 2006) (internal quotation marks and citation omitted).  There is no contract until the offeree's acceptance of an offer is communicated to the offeror.  Id.  As such, at any time prior to the acceptance of the offer and the offeree's communication of such acceptance, an offeror, as "master of his offer," may withdraw the offer.  Id. "Under traditional rules governing the formation of contracts, a substantive alteration of an offer operates as a revocation of that offer."  Radecki v. Amoco Oil Co., 858 F.2d 397, 402 n.4 (8th Cir. 1988) (citing A. Corbin, Corbin on Contracts, § 39 at 163-64; United Steelworkers of America v. Bell Foundry Co., 626 F.2d. 139, 141 (9th Cir. 1980)).  To be effective, the revocation of an offer must be communicated to the offeree before acceptance.  Woods, 2006 WL 572320, at *6.

The information before the Court shows that the parties began settlement discussions in at least February 2006, with such discussions consisting of written e-mails exchanged between counsel which addressed, inter alia, terms of a proposed settlement, counteroffer(s), inquiries seeking clarification, and subsequent clarification and modification of terms. Included in these “discussions,” in relevant part, was an offer made by the Defendant on March 7, 2006, and clarified on March 8, 2006, that Plaintiff pay the balance due on an outstanding note with a credit setoff of $35,000.00 representing the settlement amount of the case. The offer provided Plaintiff the option to make such payment on either April 1, 2006, or September 20, 2006. No time limit was specified as to when Plaintiff had to accept the offer. In response to Plaintiff’s subsequent March 8, 2006, request to clarify the offer’s monetary terms and query as to whether the settlement would encompass Defendant’s rental obligations, on March 9, 2006, Defendant modified the terms of its offer as follows: “The settlement is limited to the present lawsuit and the note. The terms are: EMC to pay AAET $35,0000 [sic]; AAET dismisses its lawsuit with prejudice; parties execute mutual releases; AAET pays off the note on 4/1/06 with a credit for the $35,000 settlement amount.” Inasmuch as Defendant’s March 7 offer (as clarified March 8) had not yet been accepted, Defendant was not precluded on March 9 from modifying the terms of its offer, which it did by revoking

the September payment option and including the requirement of execution of mutual releases.  See Woods, 2006 WL 572320, at *6; Radecki, 858 F.2d at 402 n.4.  Defendant communicated such altered terms to Plaintiff that same date.  On March 13, 2006, Plaintiff purportedly accepted the terms of the March 7 offer and opted for the September 2006 payment.  In light of the circumstances as set out above, however, such terms were no longer available to be accepted inasmuch as they had been revoked and/or modified by the terms of the March 9 communication.  No further negotiations took place.

Based on the information before the Court, it cannot be said that Plaintiff has demonstrated by clear and convincing evidence that there existed mutuality of assent by the parties to the essential terms of a settlement contract.  To the extent Plaintiff argues that a valid contract was formed on March 13 when it accepted the terms of Defendant's March 7 offer, the information before the Court is neither clear nor convincing that the terms of the March 7 offer remained on the table at that time to be accepted.  Because Plaintiff has failed to demonstrate the existence of an agreement by clear, convincing and satisfactory evidence, the undersigned finds no settlement agreement to have been reached in the cause.  Vulgamott, 154 S.W.3d at 388; B-Mall Co., 977 S.W.2d at 77.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Enforce Settlement Agreement (Docket No. 38) is denied.

Frederick R. Buckles
UNITED STATES MAGISTRATE JUDGE

Dated this _3rd_ day of May, 2006.